UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAW RAHMAN,

Plaintiff,

v.

AMERICAN TIRE DISTRIBUTOR, INC., et al.,

Defendants.

No. C13-0410RSL

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendants American Tire Distributors, Inc. and Anjani Gali's Motion for Summary Judgment." Dkt. # 132.[1] Plaintiff has asserted claims of national origin harassment and discrimination, religious discrimination, and retaliation against defendants American Tire Distributors ("ATD") and Anjani Gali.

In February 2012, ATD requested that defendant Mastech, Inc., an information technology ("IT") staffing company, recruit an IT professional to assist in the development of a

[1] Plaintiff's thirty-one page, single-spaced response memorandum and 300+ pages of exhibits (Dkt. # 147) have been considered in ruling on defendants' motion for summary judgment. Plaintiff's belated motion for leave to file an overlength response (Dkt. # 165) is therefore GRANTED in part as to the documents that were timely filed on September 22, 2014. After defendants filed their reply memorandum, however, plaintiff continued to file documents purporting to have some relationship to the pending motion. Plaintiff has withdrawn Dkt. # 157 and the Court has not considered it. See Dkt. # 167 and # 168. Plaintiff's other submissions, specifically Dkt. # 159 and # 162, were untimely, deprived defendants of their opportunity to respond, and have not been considered. Defendants' motion to strike (Dkt. # 160) as to those documents is therefore GRANTED.

new platform to grow and expand ATD's on-line business. Mastech contacted plaintiff to see if he would be interested in the assignment with ATD. Following an interview with Ms. Gali, ATD's Chief Technology Officer, ATD offered plaintiff a position. Mastech hired plaintiff as an at-will employee and assigned him to work for ATD. Mastech and plaintiff agreed to give each other two weeks' notice of termination "except in cases due to your willful misconduct or non-performance, [or] in the event that a Client requests your removal for any reason . . . ." Dkt. # 129-6 at 2.

Plaintiff began his assignment with ATD on March 5, 2012. Within ten days, plaintiff's immediate supervisor at ATD, Armond Aghabegian, became concerned about a lack of progress on the tasks plaintiff had been assigned on his first day of work and began requesting timetables and status updates. Mr. Aghabegian was not impressed with plaintiff's response: plaintiff was not particularly forthcoming about when tasks would be completed, and some of the product that was generated was deemed "terrible." Dkt. # 133 at 21. Ms. Gali shared Mr. Aghabegian's concerns about plaintiff's ability to perform the job for which he was hired: he had made a recommendation regarding hosting options with which Ms. Gali disagreed and which led her to believe that he did not understand the hosting environment or what needed to be hosted where. On March 22, 2012, Ms. Gali received information showing that plaintiff ran analytics on ATD's live website, rather than on the new site. The monitoring activity was not only against ATD policy, but could have crashed the company's website. Ms. Gali decided to terminated plaintiff's assignment with ATD that evening, and told him of the decision when he arrived at work on March 23, 2012. Mastech subsequently terminated his employment without providing two weeks' notice.

Plaintiff maintains that he was making progress on his initial assignments, that he was always responsive to Mr. Aghabegian's requests, that he did not monitor ATD's live website, and that ATD made it difficult for him to complete his assignments in a timely manner. He does not, however, cite to evidence that supports these arguments. The documents provided

by the parties suggest that plaintiff's responses to Mr. Aghabegian's emails did not provide much of the information requested, that, as of March 22, 2012, plaintiff had accomplished only a few of the initial assignments (assignments that ATD thought would take a qualified IT professional only a matter of days), and that some of plaintiff's substantive work was unsatisfactory. Plaintiff has not produced any evidence in support of his many conclusory assertions that he was "scapegoated" or that "ATD was liable for any missed deadlines although Plaintiff executed all his tasks with his level of efforts, in deliverable within the time frame even after having hindrance and non cooperation from ATD' Angajin gali and her fellow subordinates, unlawfully." Dkt. # 147 at 7 (no changes made to the original). What information, access, or guidance plaintiff needed from ATD, when and how he requested it, and ATD's responses thereto are unstated. Whatever the root cause of plaintiff's inability to get through the initial list of assignments, he failed to perform the job for which he was hired on a schedule and in a manner that was acceptable to ATD.

Plaintiff argues that ATD's unhappiness with his performance was really just a pretext for national origin and/or religious discrimination. There is no evidence, however, that any person involved in hiring, supervising, or terminating plaintiff's employment knew, much less harbored animosity about, his national origin or religion. During his eighteen day employment with ATD, plaintiff can identify only three instances in which coworkers acknowledged that plaintiff was from Bangladesh and one coworker who apparently knew he was Muslim. Dkt. # 129-3 at 33-38. The three comments involved distinctions between the citizenship laws of India and Bangladesh, cricket rivalries, and the fact that although plaintiff "looks like an Indian, he's not an Indian." Plaintiff argues that these comments created a hostile working environment and suggests that they evidenced an underlying discriminatory environment against non-Indians at ATD.

For purposes of plaintiff's hostile work environment claim, plaintiff has identified statements related to his national origin and the Court will assume that what appear to be

innocuous factual comments and/or the raving of sports fans were said in such a way that plaintiff found them to be unwelcome. Nevertheless, no reasonable jury could find that those three comments between coworkers were sufficiently severe or pervasive enough to alter the conditions in which plaintiff was employed or to create an abusive work environment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993) (evaluating frequency, severity, and nature of harassing conduct as well as its effect on the employee's work performance). Plaintiff's hostile work environment claim fails as a matter of law.

Plaintiff's disparate treatment claims also fail. Plaintiff bears the initial burden of raising an inference of unlawful discrimination. While the Court seriously doubts that plaintiff can raise such an inference given the lack of evidence that Ms. Gali was aware of plaintiff's national origin or religion, the Court will assume that plaintiff has established a prima facie case of discrimination. Defendants have come forward with a legitimate, nondiscriminatory reason for his termination: that plaintiff was not performing at the level ATD and Ms. Gali expected when they sought out and hired an IT professional. Thus, the presumption of unlawful discrimination "simply drops out of the picture," and plaintiff bears the ultimate burden of persuading the factfinder that the stated reason for the discharge was false or that the true reason for the discharge was unlawful national origin and/or religious discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 509, 511 (1993); Noyes v. Kelly Servs., 488 F.3d 1163, 1170-71 (9th Cir. 2007).

Plaintiff has produced no meaningful or specific evidence suggesting that defendants were not dissatisfied with his performance (*i.e.*, that their proffered explanation for the termination was false). The fact that plaintiff feels his performance was satisfactory or that any defects could be justified does not raise a genuine issue of material fact at this stage of the analysis: an employee's subjective personal judgment of his competence, standing alone, does not establish falsity or pretext. Schuler v. Chronicle Broadcasting Co., Inc., 793 F.2d 1010, 1011 (9th Cir. 1986). Nor has plaintiff raised an inference that Ms. Gali harbored discriminatory

animus towards him because he was from Bangladesh and/or is Muslim. There is no direct evidence of discriminatory intent, and the only indirect evidence is that Ms. Gali fired a member of a protected class. The prima facie case has been rebutted, however: simply arguing that plaintiff's termination must have been motivated by unlawful discrimination because he is a member of a protected class is not enough where the employer has come forward with a legitimate, nondiscriminatory reason for the termination. In addition, an inference of discriminatory intent is wholly unwarranted here. Ms. Gali, the person who terminated plaintiff's assignment with ATD, is the same person who originally made the decision to hire him less than a month earlier. In this context, plaintiff's unsupported assertion that Ms. Gali wanted a non-Muslim or an Indian in the position is mere speculation. "[C]laims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." Proud v. Stone, 945 F.2d 796, 797 (4th Cir.1991). Far from bearing his burden of raising a reasonable inference that the stated reason for the discharge was false or that the true reason for the discharge was unlawful national origin and/or religious discrimination, the facts of this case raise a strong inference that there was no discriminatory motive. Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (9th Cir. 1996). Defendants are therefore entitled to judgment as a matter of law on plaintiff's disparate treatment claims.

Plaintiff has failed to identify any protected activity in which he engaged prior to his termination. Plaintiff's refusal to perform tasks as requested by ATD and/or his efforts to enforce what he deemed his "scope of work" are not protected activities for purposes of a retaliation claim under Title VII. Because plaintiff did not engage in any conduct in opposition to perceived discrimination, his retaliation claim fails as a matter of law.

Plaintiff's complaint cannot fairly be read to assert a separate breach of contract claim against ATD or Ms. Gali: the complaint specifies only the causes of action identified

above. Dkt. # 1-1 at 2. To the extent the various exhibits attached to the complaint mention a breach of contract, it is in the context of describing defendants' alleged discriminatory acts. Even if the Court were to assume that plaintiff intended to assert a separate breach of contract claim, the claim would fail as a matter of law. The two week notice provision in the contract plaintiff had with Mastech was inapplicable because ATD requested that plaintiff's work on the project be terminated for failure to perform. Plaintiff has not established the existence of any contract with ATD, much less one that limited the "scope of work" he would perform while assigned to ATD.[2]

For all of the foregoing reason, defendants' motion for summary judgment (Dkt. # 132) is GRANTED. All remaining claims are hereby DISMISSED. Plaintiff's motion for leave to file an overlength response (Dkt. # 165) is GRANTED in part as to the documents that were timely filed on September 22, 2014. It is denied as to Dkt. # 159 and # 162, however: those documents were untimely filed and have not been considered. Defendants' motion to strike (Dkt. # 160) is GRANTED. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

Dated this 17th day of November, 2014.

Robert S. Lasnik
United States District Judge

[2] Plaintiff has not properly alleged claims under the Thirteenth Amendment to the United States Constitution or the Sarbanes-Oxley Act. A motion to add such claims would be denied as both untimely and futile.